[Cite as *White v. Elias*, 2012-Ohio-3814.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97734**

# EVELYN DIANE WHITE, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# ROBERT P. ELIAS, TRUSTEE, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-724649

**BEFORE:** Jones, J., Blackmon, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**ATTORNEYS FOR APPELLANTS**

Ronald A. Mingus
Brian C. Lee
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEES**

**For Robert P. Elias, Trustee**

James J. Imbrigiotta
James L. Glowacki
William H. Kotar
Glowacki & Imbrigiotta
7550 Lucerne Drive
Suite 408
Middleburg Heights, Ohio 44130

**For Kenneth G. McGuire, et al.**

Joseph J. Jacobs
Jacobs Legal Group
15614 Detroit Avenue
Suite 6
Lakewood, Ohio 44107

**For Ellen Meyer**

Timothy J. Fitzgerald
Mark A. Greer
Gallagher Sharp
6th Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115

LARRY A. JONES, SR., J.:

{¶1} This case involves injuries that plaintiff-appellant, Evelyn White, sustained when a horse kicked her in the head after it escaped from property owned by the defendant-appellee, the Elias Family Trust ("the Trust" or "Elias"). Defendant-appellee, Ellen Meyer, owned the horse. The trial court granted summary judgment in favor of the Trust and Meyer and White appealed. For the reasons that follow, we reverse the decision of the trial court.

{¶2} In Ohio, imposing liability upon the owner of animals that cause injury to a person or damage to the property of another rests upon two distinct legal theories: (1) liability imposed based upon injuries, irrespective of negligence, resulting from the animal's entry onto another's private property and causing damage or injury, and (2) liability imposed where the owner of the animal is negligent and that negligence proximately results in injury. The case at bar involves both theories.

{¶3} The pertinent procedural history and facts are as follows.

{¶4} The Elias Family Trust owns property in the city of Berea that includes two homes, a barn, and a pasture. The pasture is contained by a split-rail wooden fence. In 2009, Elias rented one of the houses and the barn to Kenneth McGuire, who decided to board horses at the property. On September 29, 2009, McGuire entered into a written agreement with Ellen Meyer to board her horse, Dakota. As part of the agreement,

Meyer agreed that "property manager Ken McGuire [and] owner Robert Elias are not liable for injur[y] cause[d] from farm activity, etc."

{¶5} McGuire contended that Elias knew about his boarding business in June 2009, but Elias claimed he did not find out about the business until October 2009. According to Elias, when he found out that McGuire was boarding horses, he handwrote a second lease agreement, which McGuire signed. According to the lease, McGuire was responsible for the "upkeep and insurance" on the property and "if the house, barn or property needs repairs it's up to [McGuire] to take care of any work." The contract also provided that if McGuire was going to sublet horse stalls and "ru[n] the barn as a business, he is [responsible] for all permits, licenses, [insurance], liability and responsibilit[ies] incurred by his new business." Elias remained responsible for paying for premises repairs and retained control of what repairs and improvements were to be made. Elias also maintained insurance on the property, which included coverage for "horses." Despite promises to the contrary, McGuire never purchased insurance for his business.

{¶6} On December 21, 2009, Meyer went to visit Dakota and released him into the pasture. Meyer left, but left Dakota unsupervised in the pasture. There was usually a trough in the pasture that the horses ate from, but a tenant had removed the trough because the horses were fighting over the food. The pasture was bare; there was no grass on which the horses could graze. Sometime during the day, six horses escaped from the pasture and ended up on neighboring property owned by the Coopers.

{¶7} The Coopers saw horses grazing in their yard and called their neighbor,

Evelyn White. White, who was familiar with the horses, went over to the Coopers' house to see if she could lead the horses home. But when White approached the group of horses, Dakota kicked back, hitting her in the face. White sustained serious and permanent injuries. Eventually all of the horses were captured and taken back to Elias's property.

{¶8} White and her husband, Edward White, filed suit against Robert Elias, individually, the Elias Family Trust, Kenneth McGuire, and Ellen Meyer and her husband, Edwin, alleging claims for strict liability and negligence. Eventually, the Whites dismissed their claims against Robert Elias and Edwin Meyer. Meyer and the Trust each moved for summary judgment, which the Whites opposed. The trial court granted summary judgment in favor of Meyer and the Trust and the Whites subsequently filed a notice of voluntary dismissal against the remaining defendants.

{¶9} In their appeal, the Whites raise three assignments of error for our review, which will be discussed out of order for clarity:

> [I.] The trial court erred in granting the Motions for Summary Judgment of Defendants Meyer and Elias Family Trust on the grounds of strict liability.

> [II.] The trial court erred in granting the Motion for Summary Judgment of Defendant, Ellen Meyer on the grounds of assumption of risk[.]

> [III.] The Trial Court erred in granting the Motion for Summary Judgment of Defendant Elias Family Trust on the grounds that there was no duty as an out of possession landlord because the evidence in this case establishes that Elias is liable for the defects present at the time Elias leased the premises; and Elias retained both control and some possession of the premises.

I. Standard of Review

**{¶10}** Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.). Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that: (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶11}** In order to survive a motion for summary judgment in a negligence action, a plaintiff must establish that genuine issues of material fact remain as to whether: (1) the defendant owed her a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998); *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). Whether a duty exists is a question of law for the court to determine. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

## II.    Strict Liability and Negligence

**{¶12}** In the first assignment of error, the Whites argues that the trial court erred in granting summary judgment to the Trust and Meyer because, as landlord and horse owner respectively, they were strictly liable for Evelyn's injuries.    We disagree.

### A.    Trespass

**{¶13}** In 1895, the Ohio Supreme Court held that "[t]he natural and well known propensity of horses, as well as other cattle, is to rove, and the owner is bound to confine them on his own land; so that, if they escape and do mischief on the land of another under the circumstances where the other is not at fault, the owner ought to be liable." *Morgan v. Hudnell*, 52 Ohio St. 552, 555 (1895).

> **{¶14}** In 1968, the Court reaffirmed this position and found that
>
> [i]f an animal breaks into the enclosed land of another, or gains entrance into such enclosure by jumping over the fence, and there damages real or personal property of the one in possession, or injures a member of his family, the owner of the trespassing animal is liable without reference to whether or not such animal was vicious and without reference to whether such propensity was known to its owner. (*Morgan v. Hudnell*, 52 Ohio St. 552, approved and followed.)

*Nixon v. Harris*, 15 Ohio St.2d 105, 238 N.E.2d 785 (1968), syllabus.    In *Nixon*, a boy was gored by a cow, which had escaped from the neighbor's fenced field and come onto his father's property.    The Court imposed liability on the cow's owner for trespass on the basis of strict liability, rather than negligence.    The *Nixon* Court expressly distinguished between cases based on a theory of negligence, where an animal owner's negligent conduct caused damage, and those tried as trespass actions based on injuries resulting from

the animal's entry upon another's property. *See Reed v. Molnar*, 67 Ohio St.2d 76, 78, 423 N.E.2d 140 (1981).

{¶15} In their complaint, the Whites alleged that R.C. Chapter 951 imposed strict liability on Meyer and the Trust for Evelyn's injuries even though the Whites did not own the property on which the accident occurred.

{¶16} Although the evolution in Ohio of strict liability for trespass by animals has evolved from recovery solely for damages to real estate to recovery for personal injuries incurred by property owners and their families, recovery has not been extended to personal injuries suffered on a third party's private property. In order for White to recover under this theory, R.C. Chapter 951 would have to impose strict liability upon the owner or keeper of an animal that runs at large onto private property owned by a third party. We find that it does not.

{¶17} The trial court found that neither the Trust nor Meyer could be held strictly liable for White's injuries because White did not own or otherwise occupy the property on which she was injured; therefore, a trespass action could not be maintained. White argues that it should not matter if she owned or occupied the property on which she was injured because she had permission to be on the Coopers' property and her lack of ownership interest should not preclude her from recovery. To support her position, White points to the facts that the Coopers invited her onto their property to help with the horses and she had a key to the Coopers' house.

**{¶18}** At the time the accident occurred,[1] R.C. 951.02 provided that

> [n]o person, who is the owner or keeper of horses, mules, cattle, sheep, goats, swine, or geese, shall permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land. * * * The running at large of any such animal in or upon any of the places mentioned in this section is prima-facie evidence that it is running at large in violation of this section. *Id.*

**{¶19}** R.C. 951.10 provided that

> [t]he owner or keeper of an animal described in section 951.01 or 951.02 of the Revised Code, who permits it to run at large in violation of either of such sections, is liable for all damages caused by such animal upon the premises of another without reference to the fence which may enclose such premises.

**{¶20}** In cases of public roads, a violation of R.C. 951.02 occurs only where the owner of an animal *negligently* permits the animal's presence on the public thoroughfare. *See Burnett v. Rice*, 39 Ohio St.3d 44, 529 N.E.2d 203 (1988); *Molnar*, *supra* at 84; *David v. Coatney*, 12th Dist. No. 1136, 1983 WL 4314 (Mar. 30, 1983). Thus, in cases where the escaped animal is found on a public road or highway, the action can only be brought in negligence. Although in this case the accident occurred on a third party's private property, we find the reasoning of the public thoroughfare cases persuasive.

**{¶21}** The theory upon which strict liability can be maintained is the theory of trespass. In other words, R.C. 951.02 and 951.10 are statutes designed for the purpose of preventing trespass and not for the benefit of an injured third party. *See Bolton v. Barkhurst,* 40 Ohio App.2d 353, 319 N.E.2d 376 (6th Dist.1973). As the concurring judge in *Bolton* noted with respect to animals running at large on highways:

---

[1] R.C. Chapter 951 was amended in 2011.

The law of Ohio applicable to animals on highways is the law of negligence. The law of trespass quare clausum fregit, as originally developed in the common law, awarded damages on the basis of strict liability for (1) damages to the real estate only, and (2) as expanded by the case of *Morgan v. Hudnell* (1895), 52 Ohio St. 552, 40 N.E. 716, included damages to personal property, and the case of *Nixon v. Harris*, 15 Ohio St.2d 105, 238 N.E.2d 785, extended damages to personal injuries. It is to be noted in these cases just cited that the gravamen of the offense was the breaking into the close of another and is absolutely differentiated from the running at large of animals, prohibited by the statutes of the state of Ohio.

*Id.* at 360 (Wiley, J., concurring).

{¶22} Neither the legislature nor the Ohio Supreme Court has expressly made a violation of R.C. 951.02 one of strict liability in cases of an animal's presence on a third party's private property. *See Rayner v. Lowe*, 60 Ohio App.3d 3, 572 N.E.2d 245 (5th Dist.1989). Because the statute was designed for preventing trespass of animals, this court declines to expressly broaden its meaning to include injuries a plaintiff suffers on a third party's private property.

{¶23} In order for the Trust to be held strictly liable, White would have to show that Elias was a "keeper" of Meyer's horse. In *Moore v. Ferkel*, 6th Dist. No. S-97-042, 1998 WL 160040 (Mar. 31, 1998), the Sixth Appellate District considered the definition of "keeper" as it relates to horses. In *Moore*, the farm owner had built the pen from which

the horse escaped, occasionally fed and cared for the horse, paid for the electricity for the electric fence, and did not charge any rent for the use of the barn or pen area. Based on those facts, the court found that a question of fact remained regarding whether farm owner exercised some degree of control over the horse. In this case, however, Elias did not have any control over Dakota. Elias did not care for or feed the horse or receive any portion of the boarding fees. He testified at deposition that he stayed away from the horses entirely because he knew nothing about horses and knew "they could do a lot of damage." Thus, Elias cannot be considered to have been a keeper of the horse.

{¶24} The horse in this case trespassed on the Coopers' property, not on land owned by the Whites. Although White had permission to be on the Coopers' property, she was not the owner or occupier of the land. Therefore, she cannot recover on a theory of strict liability.

{¶25} Based on these facts, neither the Trust nor Meyer can be held strictly liable for White's injuries.

B. Meyer's Negligence

{¶26} Next, we consider whether Meyer can be held liable for negligence; although she cannot be held strictly liable, as the horse's owner, she may be liable for negligence.

{¶27} Meyer testified at deposition that Dakota was the "alpha" horse of the pack, had acted aggressively in the past, and had previously bit and kicked other horses. Meyer recommend to McGuire that he install an electric fence because the wooden split

rail fence might not adequately contain the horses. Meyer testified that she knew that horses had escaped from the pasture before, the fence was missing rails and sections, and deer often knocked over top rails of the fence. Despite these concerns, Meyer testified that she left Dakota unsupervised in the pasture on a daily basis and knew that the horses were left completely unsupervised in the pasture about "40 percent of the time." Although Meyer claimed there was no prohibition against leaving her horse unsupervised, McGuire testified at deposition that there was a rule that the horse's owner must supervise her horse in the pasture at all times.

{¶28} We find that questions of fact remain; therefore, it is up to a jury to determine whether Meyer breached a duty of care and whether that breach was a proximate cause of White's injuries.

{¶29} In light of the above, the first assignment of error is overruled in part and sustained in part.

### III. Landlord Liability

{¶30} In the third assignment of error, White argues that the trial court erred in granting summary judgment to the Trust based on the Trust being an out-of-possession landlord. The trial court opined that Elias was an "out-of-possession" landlord and, as such, owed no duty to White. We disagree and find that questions of fact remain that preclude summary judgment.

{¶31} The law governing landlord liability in commercial leases is that a landlord who is out of possession and control of a premises is generally not liable for damages or

violations resulting from the condition of the premises. *Target Industries v. Stubbs*, 8th Dist. No. 95101, 2011-Ohio-1563, *appeal not allowed by* 129 Ohio St.3d 1505, 2011-Ohio-5358, 955 N.E.2d 387. But an out-of-possession landlord may be held liable for defects that are present at the time the landlord leases the premises to another. *See Lewis v. Morrow*, 2d App. Dist. No. 99-CA-88, 2000 WL 1299522, *4 (Sept. 15, 2000). If the defect arises after the lease, the tenant is responsible. *Id.*, citing *Shindelbeck v. Moon*, 32 Ohio St. 264, 275 (1877).

{¶32} As an initial matter, it is unclear from the record below whether the lease or leases Elias and McGuire executed were indeed commercial lease(s). Elias initially rented McGuire one of the houses on the property for $1,000 a month in May 2008. McGuire subsequently asked to lease the barn and Elias told him it would cost $2,000 a month to rent both the house and barn, but he would reduce the rent to $1,500 if McGuire labored on the property. At deposition, Elias testified that he had a written lease with McGuire for the initial rental of the house, but was unable to produce a copy of the lease. McGuire testified that there was no written lease prior to October 2009.

{¶33} Elias testified that he did not know that McGuire was running a boarding business on the property until October 2009. But McGuire testified that he received oral approval to board a horse at the property in June 2009.

{¶34} Even if the only lease between the parties was a commercial lease, questions of fact remain about whether the fence was in a state of disrepair at the time Elias leased the pasture to McGuire. When the Trust purchased the property in 2007, Elias remodeled

the houses and the barn.   When asked what the condition of the fence was when the Trust initially purchased the property, Elias testified that "it needed pieces.   It needed repair and we did all repairs we saw that was needed."   Elias testified that he installed 180 pieces of split rail fence because, "pieces were missing, pieces were rotted, and we changed all that were missing and rotted at that time."   McGuire testified that he did not make any repairs to the fence from May 2008 to December 21, 2009, the date of the accident.   But Meyer testified that she made minor repairs to the fence between September and December 2009, because the deer kept knocking off top rails of the fence.

{¶35} Debra Disbrow, the Whites' proposed expert, averred that the fence was defective and unsuitable for the containment of horses.   Disbrow opined that the fence was "suffering from many years of extreme disrepair, with evidence of rot, splitting, holes, and loose beams and poles."   Meyer testified that she thought the fence was inadequate to contain her horse and needed repair and she informed McGuire of her concerns.   She testified that there were at least ten sections of rotted wood and she thought that an electric fence was needed to contain the horses.   Elias, on the other hand, testified that he thought the fence was in fine condition and no one ever told him that the fence was inadequate to contain horses, although he did concede that the fence was for "decorative" purposes.

{¶36} According to the October 2009 lease, Elias exerted exclusive control over repairs and improvements.   He also insured the property for "horses," although he claimed at deposition that he did not know that his insurance covered horses.[2]       Based

---

[2] Evid.R. 411 provides, in part, that "[e]vidence that a person was or was not insured against

on the above facts and factual disputes, summary judgment was not proper in this case. Enough evidence existed to warrant trial on whether the Trust knew of the defective fence and failed to maintain the premises in a suitable condition. The third assignment of error is sustained.

## IV. Assumption of the Risk

{¶37} In the second assignment of error, White claims the trial court erred in finding that the doctrine of assumption of risk completely barred her from recovery. We agree.

{¶38} Assumption of the risk requires three elements: (1) one must have full knowledge of a condition; (2) such condition must be patently dangerous to her; and (3) she must voluntarily expose herself to the hazard created. *Briere v. Lathrop Co.*, 22 Ohio St.2d 166, 174-175, 258 N.E.2d 597 (1970). Although the defense of assumption of risk is generally no longer a complete bar to recovery for a claim of injury, the Ohio Supreme Court has specifically held that express assumption of risk (applicable to contracts) and primary assumption of risk still serve as complete bars to recovery. *Young v. New Southgate Lanes*, 8th Dist. No. 88552, 2007-Ohio-2923, ¶ 30.

{¶39} Primary assumption of risk arises when the defendant owes no duty to plaintiff because of plaintiff's involvement in an obviously dangerous activity. *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 114, 451 N.E.2d 780 (1983). Because determining whether

---

liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such * * * ownership or control, if controverted."

the defendant owes a duty is a matter of law, it follows that deciding whether the defense of primary assumption of risk applies to a given case is also a matter of law.

**{¶40}** Under primary assumption of the risk, a person assumes the inherent risks of certain activities and cannot recover for injuries in the absence of another's reckless or intentional conduct. *Crace v. Kent State Univ.*, 185 Ohio App.3d 534, 924 N.E.2d 906, 2009-Ohio-6898, ¶ 13. The rationale for this doctrine is that certain risks are so inherent in some activities that the risk of injury cannot be avoided. *Id.* "[P]rimary assumption of [the] risk requires an examination of the activity itself and not plaintiff's conduct. If the activity is one that is inherently dangerous and from which the risks cannot be eliminated, then a finding of primary assumption of [the] risk is appropriate." *Id.* at ¶ 16. "Because of the great impact a ruling in favor of a defendant on primary assumption of risk grounds carries, a trial court must proceed with caution when contemplating whether primary assumption of risk completely bars a plaintiff's recovery." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432, 1996-Ohio-320, 659 N.E.2d 1232.

**{¶41}** We note that most, but certainly not all, primary assumption of the risk cases deal with situations in which the plaintiff was involved in, or an observer of, a sporting event or other recreational activity. *See Crace*; *Wolfe v. AmeriCheer, Inc.*, 10th Dist. No. 11AP-550, 2012-Ohio-941 (primary assumption of risk barred recovery by cheerleader injured during cheer competition); *Morgan v. Ohio Conference of United Church of Christ*, 10th Dist. No. 11AP-405, 2012-Ohio-453 (primary assumption of risk barred recovery by church youth group leader injured while hiking); *Ballinger v. Leaniz Roofing,*

*Ltd.*, 10th Dist. No. 07AP-696, 2008-Ohio-1421 (primary assumption of the risk barred recovery by homeowner who fell off his roofer's ladder); *Bundschu v. Naffah*, 147 Ohio App.3d 105, 768 N.E.2d 1215 (7th Dist.2002) (relieving liability of driving-range owner because being hit by deflected golf ball was an inherent risk of using the driving range).

{¶42} In this case, the trial court found that White was barred from recovery based on primary assumption of risk because she admitted at deposition that she was aware of the risk that a horse may kick her when she approached it.

{¶43} But in Ohio, a person "finding an animal at large in violation of section 951.01 or 951.02 of the Revised Code, *may * * * take and confine such animal.*" (Emphasis added.)   R.C. 951.11; *see Albright v. Payne*, 43 Ohio St. 8, 1 N.E. 16 (1885). Because the law provides that a citizen upon seeing an animal at large is permitted to "take and confine" the animal, we find as a matter of law that primary assumption of the risk does not apply to the facts of this case so as to completely bar White from recovery.

{¶44} The second assignment of error is sustained.

{¶45} In sum, primary assumption of the risk does not apply so as to completely bar White from recovery.   Although neither the Trust nor Meyer can be held strictly liable for White's injuries, questions of fact remain whether they may be liable for negligence in this matter.   Therefore, the trial court erred in granting summary.

{¶46} Accordingly, the judgment rendered in this case is reversed and the case is remanded with proceedings consistent with this opinion.

It is ordered that appellants recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, A.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN
JUDGMENT ONLY WITH SEPARATE OPINION


SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶47} I concur in judgment only with the majority decision.

{¶48} I agree that strict liability may not be imposed under a theory of trespass upon the premises of another because White does not hold a possessory interest in the property where the injury occurred. The owners of animals described in R.C. Chapter 951 have a duty to exercise ordinary care in preventing such animals from running at large on a public thoroughfare or upon unenclosed land, and there is a rebuttable presumption of negligence when such an animal is running at large in those places. There are genuine issues of material fact in this matter as to whether reasonable precautions were taken to prevent the escape of the horse. I also agree that material issues of fact remain as to the liability of the Trust as a landlord. Further, I agree that primary assumption of risk does

not apply as a complete bar to recovery in this case.

{¶49} While I am constrained to follow the law in this matter, I believe the legislature may wish to revisit the statutes that are applied to roaming livestock.