NIXON ET AL., APPELLANTS, *v.* HARRIS, APPELLEE.

[Cite as Nixon v. Harris, 15 Ohio St. 2d 105.]

(No. 41381—Decided July 3, 1968.)

*Messrs. Hoover, Beall & Eichel* and *Mr. Walter C. Beall*, for appellants.

*Messrs. Fitton, Pierce, Baden & Wynn, Mr. Paul A. Baden, Messrs. Crabbe, Newlon, Bilger, Brown & Jones* and *Mr. James L. Graham,* for appellee.

HERBERT, J. Historically, the courts, the General Assembly and the common law have been sensitive to the changing social and economic pattern of Ohio, as well as elsewhere. A basic motivating force causing changes in the structure of society and the economy has been the growing population. This constantly changing status of conditions has affected agriculture in its growth, development and diversification.

One hundred and thirty-seven years ago a problem of domestic animals running at large was presented to this court in the case of *Town of Marietta* v. *Fearing,* 4 Ohio 428 (1831). Marietta adopted an ordinance imposing a fine upon any person who permitted his horse to run at large on the streets of the town. Defendant's residence was outside but adjacent to Marietta. Defendant's horse, while lawfully grazing on the highway outside of Marietta, strayed into the corporate limits of Marietta. Marietta attempted to impose a fine upon the owner of the horse. This court, in disposing of the question, laid down this principle of law in the syllabus as follows:

"Incorporated towns within this state can not subject stray animals, owned by persons not residents of such towns, to their corporation ordinances."

One hundred and thirty-seven years ago the public use of highways in a town was subservient to their use as pasture for horses owned by nonresidents of said town.

But, by 1895, this court and the General Assembly had recognized that the growth of population and the necessi-

ties of industry required that animals be kept fenced in, rather than fenced out. The second paragraph of the syllabus in *Morgan* v. *Hudnell,* 52 Ohio St. 552, reads:

"But if the animal breaks into the close of another, and there damages the real or personal property of the one in possession, the owner of the trespassing animal is liable without reference to whether or not such animal was vicious and without reference to whether such propensity was known to the owner."

The rule of strict liability reflected in *Morgan, supra,* was a natural development of the times. In *Zarbaugh* v. *Ellinger,* 99 Ohio St. 133, at page 135 in the opinion, the following comment appears:

"The legislation in Ohio with reference to fencing lands has advanced from time to time in the light of experience and to meet what the General Assembly regarded as the requirements of changing conditions."

Apparently the Court of Appeals does not agree with the holding in *Morgan* v. *Hudnell, supra.* However, the following does appear in the opinion of the Court of Appeals:

"Upon this state of the record, plaintiff relied for recovery on the theory of livestock trespass claiming the common-law rule of strict liability applied to this set of facts. Under that rule, possessors of livestock intruding upon the lands of other persons were held liable as for trespass, and the exercise of due care in keeping the animals confined did not affect the liability and the action was brought upon the theory of trespass *quare clausum fregit,* the gist of which was the breaking and entering of the close. The rule was held applicable to personal injury cases and available to the owner or occupier and members of his household."

Though not as agile as the cow in the Mother Goose rhyme, there was evidence that cows do jump fences (this was known to appellee) and that this propensity is stimulated when the animal is in heat and particularly when a

bull is in the vicinity. There was also evidence that the fence was 42 inches high, "chest high," and that the cow could not get back into Arnold's field through the fence. After the fence was examined, a staple pulling tool was procured, the staples securing the fence to two posts were pulled, the fence was pushed down and the cow passed into her proper enclosure.

The following is also from the opinion of the Court of Appeals:

"In *Drew* v. *Gross,* 112 Ohio St. 485, it is stated in syllabus one:

" 'The owner of a domestic animal is responsible for negligence in its keeping whereby damage is occasioned.'

"In *Barber* v. *Krieg,* 172 Ohio St. 433, the syllabus states:

" 'The owner of a domestic animal is responsible for negligence in its keeping whereby damage is occasioned.'

" '* * *

"From the foregoing citations it will appear that the common-law rule of strict liability in trespass does not obtain in Ohio. * * *' "

We are in complete agreement with those cases. They were tried upon the theory of negligence, *i. e.,* that the negligent act of the *owner* of the animal was a proximate cause of plaintiff's damages. Trespass was not an issue. The case at bar, however, is one *in trespass*; the acts of the *animal* alone were the proximate cause of the boy's injuries. Negligence was not an issue.

We see no reason to disapprove or overrule *Morgan* v. *Hudnell, supra.* It is sound law and consistent with changing conditions. It follows, therefore, that the judgment of the Court of Appeals must be, and hereby is, reversed and the judgment of the Court of Common Pleas is affirmed.

*Judgment reversed.*

Taft, C. J., Zimmerman, Matthias, O'Neill, Schneider and Brown, JJ., concur.