76

Reed et al., Appellants, *v.* Molnar et al., Appellees.

[Cite as Reed v. Molnar (1981), 67 Ohio St. 2d  76.]

(No. 80-1287—Decided July 8, 1981.)

*Messrs. Critchfield, Critchfield, Critchfield & Johnston, Mr. Walter C. Grosjean* and *Mr. J. Douglas Drushal,* for appellants Reed.

*Messrs. Hargreaves & Fannelly, Mr. Angelo Fannelly* and *Mr. John Lambert,* for appellant Buckeye Union.

*Messrs. Williams & Batchelder, Ms. Alice M. Batchelder*

and *Mr. William G. Batchelder, Jr.,* for appellees John Molnar, Sr. and Dorothy Molnar.

*Messrs. Weston, Hurd, Fallon, Paisley & Howley* and *Mr. James L. McCrystal, Jr.,* for appellees John Molnar, Jr. and Julia Molnar.

*Per Curiam.* Appellants contend that proof of the unsupervised presence of domestic animals, such as cattle, in a public highway results in the animals' owner or keeper being subject to strict liability in tort for damages resulting therefrom or, alternatively, constitutes negligence *per se.*

We reject appellants' contention that a strict liability theory is applicable to this cause. The syllabus of *Nixon* v. *Harris* (1968), 15 Ohio St. 2d 105, upon which appellants base their argument, provides, as follows:

"If an animal *breaks into the enclosed land of another,* or gains entrance into such enclosure by jumping over the fence, and there damages real or personal property of the one in possession, or injures a member of his family, the owner of the trespassing animal is liable without reference to whether or not such animal was vicious and without reference to whether such propensity was known to its owner.***" (Emphasis added.)

The plaintiff in *Nixon* brought his action in *trespass.* The opinion in *Nixon* expressly distinguishes between cases based on a theory of negligence, where an animal owner's negligent conduct allegedly caused damage, and those tried as trespass actions, based on injuries resulting from an animal's entry upon another's property. However, appellants have not alleged that they held any possessory interest in State Route 18 where the collision occurred. In Prosser on Torts (4 Ed.) Section 76, at 498, it is stated that "[o]n the highway itself, even an escaped animal is not a trespasser, and there is no strict liability for any harm which it may do upon that basis." Nor was it alleged that appellees' cattle were inherently dangerous animals, likely to inflict serious damage. Cf: Prosser, *supra,* at 499-500. Under these circumstances we see no reason to hold appellees to the standards of strict liability.

Nor do we find the doctrine of negligence *per se* to be applicable to this cause.

R. C. 951.02, as effective on the date of the accident, provided in part:

"A person, firm, or corporation which is the owner or has charge of horses, mules, cattle, sheep, goats, swine, dogs, or geese, shall not permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land.
"* * *

"The running at large of any such animal in or upon any of the places mentioned in this section is prima-facie evidence that it is running at large in violation of this section."

R. C. 951.09, as effective on the date of the accident, provided in part:

"It is a sufficient defense to such prosecution [for violation of 951.02] to show that the animal was at large without the knowledge or fault of its owner or keeper."

R. C. 951.10, as effective on the date of the accident, provided in part:

"The owner or keeper of an animal described in section 951.02 of the Revised Code, who permits it to run at large in violation of such section, is liable for all damages caused by such animal *upon the premises of another* without reference to the fence which may enclose such premises.* * *" (Emphasis added.)

"Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; but where there exists a legislative enactment expressing for the safety of others, *in general or abstract terms,* a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case." *Eisenhuth* v. *Moneyhon* (1954), 161 Ohio St. 367, paragraph three of the syllabus. (Emphasis added.) Where a statute imposes a *specific* requirement or duty, the jury need only determine whether a prohibited act was committed or a required act was omitted, to find the violator of the statute negligent *per se.* "But where duties are undefined [in the statute], or defined only in abstract or general terms, leaving to the jury the ascertainment and

determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances, the phrase negligence *per se* has no application." *Swoboda* v. *Brown* (1935), 129 Ohio St. 512, 523.

Having applied the foregoing criteria to R. C. 951.02, we conclude that that statute does not impose a requirement of an absolute and specific nature justifying application of the doctrine of negligence *per se*. The statute prohibits the owner or keeper of certain domestic animals, including cattle, from "permitting" such animals to run at large on public highways. In Annotation, Owner's liability, under legislation forbidding domestic animals to run at large on highways, as dependent on negligence, 34 A.L.R. 2d 1285, at 1289, it is stated:

"Where the particular statute involved provides that the owner shall not 'permit'***his animals to run at large, the courts have generally held, or recognized, that statutes of this type are not violated *in the absence of at least negligence* by the owner of the animals." (Emphasis added.)

That a violation of R. C. 951.02 requires, at a minimum, negligent conduct on the part of an owner or keeper is demonstrated by R. C. 951.09, where it is provided that it "is a sufficient defense to such prosecution to show that the animal was at large *without the knowledge or fault* of its owner or keeper." (Emphasis added.)[1] It is true that one contending that a cattle owner violated R. C. 951.02 is given an evidentiary boost in that the statute provides that the running at large of cattle on a public highway constitutes "prima-facie evidence that it is running at large in violation of this section." Thus, an owner or keeper is under a burden of producing evidence that the presence of his animals upon the highway (that having been established by the plaintiffs) was without his knowledge or fault. Nevertheless, in determining whether R. C. 951.02 was violated, the fact finder must weigh the "reasonableness and correctness" of the owner's "acts and conduct under the proven conditions and circumstances," *Swoboda* v. *Brown, supra,* and the doctrine of negligence *per se* is inapplicable.

---

[1] See 2 Restatement of Torts 2d 11, Section 282, at Comment *f:* "The fact that negligence as here defined is conduct which falls below the standard of behavior established by law for the protection of others carries with it the idea of social fault." See, generally, Prosser on Torts (4 Ed.) Section 4, at pages 16-19.

In their second proposition of law, appellants contend that the trial court committed reversible error in failing, upon request, to instruct the jury on the evidentiary doctrine of *res ipsa loquitur*.

"To warrant application of the rule [of *res ipsa loquitur*] a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake* v. *Wiedemann Brewing Co.* (1970), 23 Ohio St. 2d 65, 66-67; *Jennings Buick, Inc.,* v. *Cincinnati* (1980), 63 Ohio St. 2d 167, 170.

A division of authority exists on the question of the applicability of *res ipsa loquitur* to animal escape cases.[2] Without passing on the first branch of the foregoing test, we find that it may not be said that the presence of unattended cattle on the public highway is an occurrence that would not have materialized absent someone's negligence. Thus, the doctrine is inapplicable and appellants were not prejudiced by the trial court's refusal to instruct the jury on *res ipsa loquitur*.

In coming to this conclusion we are not unmindful of the legislative recognition implicit in R. C. 951.09 that animals may escape without fault or negligence of their owners. Similarly, there has been judicial recognition that cattle and other domestic animals can escape from perfectly adequate confines.[3] *Wilson* v. *Rule* (1950), 169 Kan. 296, 219 P. 2d 690; *Barnes* v. *Frank* (1970), 28 Colo. App. 389, 472 P. 2d 745.

Appellants' third proposition of law suggests that the trial

[2] See *Nuclear Corp. of America* v. *Lang* (C.A. 8, 1973), 480 F. 2d 990; *Scanlan* v. *Smith* (1965), 66 Wash. 2d 601, 404 P. 2d 776; Cf. *Wilson* v. *Rule* (1950), 169 Kan. 296, 219 P. 2d 690; *Akin* v. *Berkshire* (1973), 85 N.M. 425, 512 P. 2d 1261.

[3] It merits emphasis in this case that the trial court, by overruling the motion of John Molnar, Jr. and his wife for directed verdict at the close of the plaintiffs' case, held that the plaintiffs had established a prima facie case of negligence. The jury, on the basis of all the evidence, found for the defendants. We express no opinion as to whether it would have been error for the court to remove the case from the jury on this or a similar record where some evidence exists from which an inference of negligence might be drawn (*e.g.,* allegedly inadequate maintenance of the barn gate and latch).

court erred in allowing the issue of Reed's contributory negligence to go to the jury. Appellants assert that the record is devoid of evidence tending to show negligence on the part of plaintiff Darle Reed.

We disagree. There was evidence Reed altered his headlights, thereby reducing their range. There was also evidence that the night was misty and visibility reduced, and that Reed was proceeding at 45 m.p.h. prior to impact. The absence of skid marks, appellants argue, demonstrates that the cattle darted in front of him. However, a jury might, given these facts, rationally infer that Reed failed to see the cows standing in the road. In any event, these are circumstances appropriate for the jury when considering whether Reed's operation of the truck was such as to allow him to stop his vehicle within an assured clear distance ahead. We conclude that the trial court properly instructed the jury on whether Reed was contributorily negligent in the encounter with the cows in his lane of travel.

In their fourth proposition of law, appellants contend that the trial court abused its discretion in failing to allow the testimony of a witness whose name was not brought to the attention of the court and opposing counsel until one week prior to trial.

The record shows that a pre-trial conference was held by the court on April 23, 1979, at which counsel for all parties appeared. In a pre-trial order issued by the court on May 8, 1979, all witnesses were listed. Listed among plaintiffs' witnesses were "Neighbors of Mr. and Mrs. Reed." On September 25, appellants served a motion to amend the pre-trial order. Appellants assert before this court that the listing was typographically incorrect and should have read "Neighbors of Mr. and Mrs. Molnar." The court denied the motion in chambers on October 2, 1979, the first day of trial.

As part of its pre-trial order the court ordered that "this Pre-Trial Memorandum and Order shall supplement the pleadings and govern the course of the trial of this cause, *unless modified to prevent manifest injustice.*" (Emphasis added.) Similarly the order provided that "[a] list containing complete names of these and any additional witnesses will be furnished opposing counsel no later than thirty (30) days prior to trial."

Appellants failed to demonstrate how "manifest injustice" would result upon the court's refusal to allow these witnesses to testify, nor did they proffer any excuse for their failure to discover the typographical error in a timely manner. We find no abuse of discretion in the trial court's failure to amend the pre-trial witness list.

Appellants' remaining argument asserts as error the trial court's direction of a verdict in favor of John Molnar, Sr. and Dorothy Molnar, at the close of the plaintiffs' case. Appellants contend that, although a landlord out of possession and control, Molnar, Sr. had so undertaken to maintain and repair the farm premises as to impose liability upon him for negligence in connection with such activities.

Although there was evidence that Molnar, Sr. had made various repairs around the farm, no evidence exists to support the contention that he had undertaken to perform future repairs. Arguably Molnar, Sr. might have been liable had the security bar he installed been negligently installed and damages resulted therefrom. However, the undisputed evidence shows that the security bar remained in place, and it can only be concluded that it served the purpose for which it was installed—it precluded cattle from breaking down the Dutch door.[4]

The trial court did not err in directing a verdict in favor of defendants Molnar, Sr. and Dorothy Molnar at the close of plaintiffs' evidence. *Burdick* v. *Cheadle* (1875), 26 Ohio St. 393; *Berkowitz* v. *Winston* (1934), 128 Ohio St. 611; *Cooper* v. *Roose* (1949), 151 Ohio St. 316.

For the foregoing reasons the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part.

---

[4] We are in agreement with the Court of Appeals that exclusion of Molnar, Sr.'s tax returns for the years 1973, 1974, and 1975, showing repair expenses was not prejudicial, those returns being merely cumulative of Molnar, Sr.'s testimony that he had made repairs, and to the cost of those repairs.

I concur in the affirmance of the judgment of the trial court directing a verdict in favor of defendants Molnar, Sr. et al. at the close of plaintiffs' evidence.

However, I would find the owners of the errant cattle liable to plaintiffs, based on either strict liability in tort or negligence per se. Therefore, I dissent from today's affirmance of the verdict in favor of defendants Julia and John Molnar, Jr.

I would extend the holding in *Nixon* v. *Harris* (1968), 15 Ohio St. 2d 105, beyond trespass onto private property, to include strict liability for injuries caused by domestic animals on public highways. *Bolton* v. *Barkhurst* (1973), 40 Ohio App. 2d 353, at 357. Certain animals involve an obvious danger to the community, and strict liability should follow from that obvious risk. I find the risk to travellers on our highways from cattle out on a midnight stroll so obvious as to demand application of strict liability in tort. Furthermore, the danger to persons on private property from trespassing animals is the same as that facing travellers on our highways. It is ludicrous to apply strict liability in tort to the former and not the latter.

However, even if strict liability in tort is rejected, I believe R. C. 951.02 imposes a specific duty on the owner of cattle, making him liable for damages caused whenever his animals run at large in violation of the statute. This view necessarily conflicts with *Marsh* v. *Koons* (1908), 78 Ohio St. 68, which the majority follows *sub silentio.* Decided in the days of the horse and buggy, *Marsh* held that an earlier version of R. C. 951.02 had as its object not the protection of highway travellers, but the prevention of trespasses. *Marsh* v. *Koons, supra,* paragraph one of the syllabus. Absent strict liability in tort, I would overturn this ancient holding, and apply the rule of negligence per se to accidents caused by livestock on the highways. See *Pigman* v. *Nott* (1975), 305 Minn. 512, 513, 233 N.W. 2d 287. See, generally, Prosser on Torts (4 Ed.) 496, Section 75.

Finally, I believe it was error for the trial court to instruct the jury on contributory negligence. Plaintiff Darle Reed, the only witness to the accident, testified that the cattle suddenly darted into his path. This evidence was unrefuted.[5] Con-

---

[5] The only evidence on the issue of sudden intrusion of the cattle into plaintiff's lane of travel was plaintiff's testimony as follows:

sequently, there was no evidence tending to show plaintiff violated the assured clear distance ahead provision of R. C. 4511.21. This was the only arguable basis for defendants' contention of contributory negligence. Sudden intrusion into plaintiff's lane of travel by an object (cattle) excuses plaintiff's compliance with the statutory assured clear distance ahead provision. *McFadden* v. *Breuer Transportation Co.* (1952), 156 Ohio St. 430; *Sherer* v. *Smith* (1951), 155 Ohio St. 567; *Erdman* v. *Mestrovich* (1951), 155 Ohio St. 85; 7 Ohio Jurisprudence 3d 294-297, 313-314, Automobiles and Other Vehicles, Sections 185 and 196. See, also, *Blair* v. *Goff-Kirby* (1976), 49 Ohio St. 2d 5. This sudden intrusion sufficed to eliminate any question on contributory negligence.

---

"[on direct examination] A.***and all of a sudden these here cattle popped out in front of me, like if you drive a car out in front of somebody, and it was all over with.***"

"[on cross-examination] A. The cows were running across the highway.***

"A. They come out in front of me, just as if somebody drove out in front of you, like a car, sudden intrusion, I guess is what you call it.***"