[Cite as *Sanders v. Frank*, 2015-Ohio-3644.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| HEATHER SANDERS, et al., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-T-0074** |
| JOSEPH D. FRANK, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 02689.

Judgment: Affirmed.

*Michael A. Ognibene,* 204 Monroe Street, Warren, OH 44483 (For Plaintiff-Appellant).

*Robert F. Burkey,* Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, OH 44483 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, Heather Sanders, appeals the judgment of the Trumbull County Court of Common Pleas in favor of defendant-appellee, Joseph D. Frank, and dismissing the Complaint with prejudice. The issues before this court are whether the doctrines of contributory negligence and/or assumption of the risk are applicable where a defendant negligently violates a statutory duty to not allow animals to run at large; whether the rescue doctrine precludes the application of assumption of the risk where a plaintiff voluntarily assists in the capture of horses running at large; whether, under

these circumstances, the trial court erred by applying the doctrine of assumption of the risk; and whether, under these circumstances, the trial court's conclusion that contributory negligence and/or assumption of the risk prevented recovery by the plaintiff is against the manifest weight of the evidence. For the following reasons, we affirm the decision of the court below.

{¶2} On November 30, 2012, Heather and Shawn Sanders filed a Complaint against Joseph Frank in the Trumbull County Court of Common Pleas. The Complaint alleged that Frank "negligently allowed three horses owned or kept by him to run at large upon the public road/highway and upon unenclosed land, creating a risk of harm to the public," and that Heather, "attempt[ing] to secure one of the horses * * *, sustained personal injuries."

{¶3} On March 27, 2014, the case (liability only) was tried before a magistrate.

{¶4} On May 9, 2014, a Magistrate's Decision: Findings of Fact and Conclusions of Law was issued. In relevant part, the magistrate found as follows:

> On July 22, 2011, Heather Sanders sustained an injury while attempting to rescue/restrain a horse named "Kush" that had escaped from Joseph Frank's fenced enclosure. Sanders voluntarily offered her assistance to corral the animal as she had done on other occasions when Frank's horses escaped.
>
> * * *
>
> Initially, the Court finds Frank was in violation of R.C. 951.02 since Kush was a horse who escaped an enclosure and ventured over

2

roads onto the property of another. This equates to "running at large" as prohibited by the statute.

* * *

The court finds Sanders volunteered to assist in the rescue and return of Kush to his enclosure. In addition, the Court finds Sanders knowingly acted with full awareness of the dangers, unpredictability and natural propensities of horses. Therefore, the Court finds implied assumption of the risk applies to Sanders. Although this is not a complete bar to recovery, the Court finds the inherent risks borne without thought by Sanders outweigh the negligence of Frank in allowing the horse to escape its enclosure.

* * *

The Court considered the totality of the circumstances. This was not the first time Kush had escaped from the enclosure. Likewise, this was not the first time Sanders had assisted in his return to the barn. However, at the time of the rescue and corresponding injury, the animal was not on the roadway presenting an imminent threat. Rather, it had already crossed the road and found itself in a field on the other side owned neither by Sanders or Frank. Sanders was not acting to prevent any property damage to her own real estate. The Court finds Sanders assisted with a genuine sincerity in protecting the horse and others from any potential harm. However,

3

the Court finds Sanders was also well aware of the dangers associated with corralling a horse under these circumstances.

* * *

Therefore, the Court finds Frank breached his duty of care in allowing his horse to escape the enclosure. In addition, the Court finds the injury of Sanders was a direct and proximate result of this breach of duty. However, the Court must also find that under the doctrine of implied assumption of the risk/contributory negligence, Sanders was more than fifty-percent responsible for the injuries she sustained as she was certainly aware of the risk in rescuing the horse and proceeded in spite of those risks.

{¶5} On May 21, 2014, Sanders filed Objections to the Magistrate's Decision, to which Frank filed a Memorandum in Opposition on July 18, 2014.

{¶6} On August 14, 2014, the trial court issued a Judgment Entry, overruling Sanders' Objections and adopting the Magistrate's Decision.

{¶7} On August 27, 2014, Sanders filed her Notice of Appeal. On appeal, she raises the following assignments of error:

{¶8} "[1.] The trial court committed prejudicial error by applying comparative negligence/assumption of the risk against plaintiff-appellant in favor of defendant-appellee, contrary to R.C. 951.10(A), which provides that negligent horse owners are responsible for all damages caused by their unconfined horses."

{¶9} "[2.] The trial court committed prejudicial error in failing to apply the rescue doctrine which would prevent assumption of the risk from barring plaintiff-appellant Heather Sanders' claim for injuries against the negligent horse owner."

{¶10} "[3.] The trial court committed prejudicial error in finding that plaintiff-appellant voluntarily assumed the risk when there was no other reasonable alternative to alleviate risk of injury to the public."

{¶11} "[4.] The trial court committed prejudicial error by ruling counter to the manifest weight of the evidence, that plaintiff-appellant was more than fifty percent responsible for injuries resulting from her successful efforts to capture defendant-appellee's loose horses."

{¶12} In her first assignment of error, Sanders argues that application of contributory negligence/assumption of the risk where liability is based on animals allowed to "run at large" frustrates the legislative purpose of the statute. At the time of her injury, "[t]he owner or keeper of an animal * * * who permits it to run at large * * * [wa]s liable for all damages caused by such animal * * *." Former R.C. 951.10.[1] Sanders asserts that it was the legislature's intent that violators be liable for "all damages" without "exception for persons assisting to confine the animal." Appellant's brief at 7. Sanders, in effect, argues that R.C. Chapter 951 is a strict liability statute.

{¶13} As a question of law, we review the issue de novo. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9 (the interpretation of statutes is a question of law and, thus, reviewed de novo).

---

1. The statute has since been modified to read: "The owner or keeper of an animal * * * who negligently permits it to run at large * * * is liable for all damages resulting from injury, death, or loss to person or property caused by the animal * * *." R.C. 951.10(A).

5

{¶14} Under a statute "interpreted as imposing strict liability," that is "liability without fault," "the defendant will be deemed liable *per se*—that is, no defenses or excuses * * * are applicable." *Sikora v. Wenzel*, 88 Ohio St.3d 493, 495, 727 N.E.2d 1277 (2000). "Courts generally agree that violation of a statute will not preclude defenses and excuses—*i.e.*, strict liability—unless the statute clearly contemplates such a result." *Id.* at 496.

{¶15} There is no legal authority in Ohio for the proposition that R.C. Chapter 951 imposes strict liability on violators. The cases of which this court is aware hold otherwise.

{¶16} The case of *White v. Elias*, 2012-Ohio-3814, 4 N.E.3d 391 (8th Dist.), involved a substantially similar fact pattern. In that case, the defendant's horses escaped and were at large on the property of a third party. The plaintiff, "who was familiar with the horses," entered the property of the third party to assist in their capture and was injured as a result thereof. *Id.* at ¶ 4-7.

{¶17} The court of appeals held that R.C. Chapter 951 did not impose strict liability upon the owner or keeper of an animal that runs at large and injures a plaintiff on private property owned by a third party. *Id.* at ¶ 16. "Neither the legislature nor the Ohio Supreme Court has expressly made a violation of R.C. 951.02 one of strict liability in cases of an animal's presence on a third party's private property." *Id.* at ¶ 22.

{¶18} The court of appeals cited several cogent reasons to support its holding.

{¶19} The Ohio Supreme Court had previously interpreted R.C. 951.02 as "creat[ing] a rebuttable presumption of negligence when an animal is at large and upon a public thoroughfare." *Burnett v. Rice*, 39 Ohio St.3d 44, 46, 529 N.E.2d 203 (1988).

6

The court noted that "the imposition of strict liability in the case *sub judice* would conflict directly with the plain language of [former] R.C. 951.02 that '[t]he running at large of any such animal * * * is prima-facie evidence that it is running at large in violation of this section.'" *Id.*; *Reed v. Molnar*, 67 Ohio St.2d 76, 80, 423 N.E.2d 140 (1981) ("R.C. 951.02 * * * does not impose a requirement of an absolute and specific nature justifying application of the doctrine of negligence *per se*"). The court of appeals in *White* held that, "[a]lthough in this case the accident occurred on a third party's private property, we find the reasoning of the public thoroughfare cases persuasive." *White*, 2012-Ohio-3814, at ¶ 20.

{¶20} The court of appeals in *White* acknowledged that strict liability could potentially apply in a case where liability was premised on trespass, rather than negligence. As in the present case, however, "[t]he horse in [*White*] trespassed on [a third party's] property, not on land owned by the [plaintiff]." *Id.* at ¶ 24. Thus, liability in both cases was premised on the defendants' negligence. While Sanders, like the plaintiff in *White*, "had permission to be on the * * * property, she was not the owner or occupier of the land," and "[t]herefore, she cannot recover on a theory of strict liability." *Id.*

{¶21} As there is no authority for the proposition that Frank is strictly liable for damages resulting from his negligence, there is no impediment to the application of contributory negligence and/or assumption of the risk.

{¶22} The first assignment of error is without merit.

7

{¶23} Under the second assignment of error, Sanders argues that the application of the rescue doctrine precluded consideration of her comparative negligence/assumption of the risk.

{¶24} With respect to the rescue doctrine, the Ohio Supreme Court has held that "[i]t is not negligence per se for one to voluntarily risk his own safety or life in attempting to rescue another from impending danger." *Pennsylvania Co. v. Langendorf*, 48 Ohio St. 316, 28 N.E. 172 (1891), paragraph one of the syllabus. "In an action to recover on account of injuries sustained in an effort to save human life the conditions upon which there may be a recovery are: That the person whose rescue is attempted must be in a position of peril from the negligence of the defendant, and the rescue must not be attempted under such circumstances, or in such a manner, as to constitute recklessness." *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Lynch*, 69 Ohio St. 123, 68 N.E. 703 (1903), syllabus. The *Langendorf* and *Lynch* "cases establish the doctrine that, while it is not negligence *per se* for one to voluntarily risk his own safety and life in an effort to rescue another from impending danger, and that the question whether a given course of conduct becomes contributory negligence is one of mixed law and fact to be submitted to the jury, nevertheless, if one rashly and unnecessarily exposes himself to danger, and a rescue is attempted under such circumstances, or in such manner as to constitute recklessness, the presumption of contributory negligence arises." *Buell v. New York Cent. Rd. Co.*, 114 Ohio St. 40, 50, 150 N.E. 422 (1926).

{¶25} Sanders maintains that her efforts to restrain Frank's horses were necessary to protect others from imminent harm. Sanders emphasizes that Frank's horses were going back and forth across the roadway and several witnesses testified

serious injury or death could result if a vehicle struck one of the horses. Sanders further emphasizes that she was the person at the scene most qualified to restrain the horses and that the police were unable to do so.

{¶26} The evidence before this court supports the lower court's determination that the rescue doctrine is inapplicable as there was no impending or imminent danger to human life. The possibility of a motorist striking a horse is a real danger, but not imminent. As noted by the magistrate, Kush was not on the roadway at the time of Sanders' injury. The possibility of collision was merely a possibility, not a present danger. There was no testimony that any vehicle had passed by or almost struck one of the horses. On the contrary, the likelihood of collision in the present case was lessened by the presence of officers and a crowd of people at the scene, which would indicate to any approaching motorist the need for caution. Ultimately, it was the officers' duty, not Sanders', to restrain the horses. R.C. 951.11 ("[a] person finding an animal at large in violation of section 951.02 of the Revised Code, may, and a law enforcement officer * * * shall, take and confine that animal").

{¶27} The second assignment of error is without merit.

{¶28} Under the third assignment of error, Sanders argues that she could not be found to have voluntarily assumed the risk of injury since she was responding in a reasonable manner to an emergency situation. Sanders cites the following from the Restatement (Second) of Torts: "The plaintiff's acceptance of risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to * * * avert harm to himself or another." Restatement of the Law 2d, Torts, Section 496E(2)(a) (1965).

9

{¶29} Sanders' argument fails for essentially the same reasons the rescue doctrine was found inapplicable. The facts of the present case do not support the conclusion that Sanders' conduct was the only reasonable course of action to avert harm to another. As noted above, there was no impending danger of harm to another, only a potential danger, the risk of which was greatly mitigated by the facts that the horse was not in a public roadway and that police officers were on the scene. Sanders' decision to assist in restraining the horses was not compelled by an emergency situation.

{¶30} The third assignment of error is without merit.

{¶31} In the fourth assignment of error, Sanders argues that the lower court's determination that she was more than fifty percent responsible for her injuries is against the manifest weight of the evidence.

{¶32} "The contributory fault of a person does not bar the person as plaintiff from recovering damages that have directly and proximately resulted from the tortious conduct of one or more other persons, if the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery in this action and of all other persons from whom the plaintiff does not seek recovery in this action." R.C. 2315.33. "'Contributory fault' means contributory negligence, other contributory tortious conduct, or, * * * express or implied assumption of the risk." R.C. 2307.011(B).

{¶33} When reviewing the weight of the evidence, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost

its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted.) *Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶34}** Sanders' position is that her degree of culpability "can only be judged by the reasonableness of her decision to place herself at risk." Appellant's brief at 15. In other words, the reasonableness of Sanders' decision to assume the risk of injury must be balanced against Frank's negligent conduct in permitting his horses to run at large. According to Sanders' estimation of the parties' conduct, "[t]he manifest weight of the evidence does not support the trial court's judgment that the civic minded, good Samaritan's culpability exceeds that of the serially negligent horse owner." Appellant's brief at 16.

**{¶35}** Sanders is incorrect that the application of the contributory negligence statute requires the weighing of the relative reasonableness of the parties' conduct. "Contributory fault" as used in the statute implicates the relative degree to which each party's conduct proximately caused the plaintiff's injuries, rather than the comparative reasonableness of their conduct.

**{¶36}** Sanders relies on the Ohio Supreme Court's ruling that "the defense of assumption of risk is merged with the defense of contributory negligence under R.C. 2315.19 [now R.C. 2315.33]." *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 113, 451 N.E.2d 780 (1983). Sanders interprets this ruling to mean that the doctrine of assumption of the risk only relieves a defendant of liability for his negligence to the

11

extent that the assumption of the risk constitutes contributory negligence, i.e., was unreasonable. This is not a proper interpretation.

{¶37} The doctrines of implied or secondary assumption of the risk and contributory negligence are distinct.

> Where they have been distinguished, the traditional basis has been that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable man, however unaware, unwilling, or even protesting the plaintiff may be. Obviously the two may coexist when the plaintiff makes an unreasonable choice to incur the risk; but either may exist without the other. The significant difference, when there is one, is likely to be one between risks which were in fact known to the plaintiff, and risks which he merely might have discovered by the exercise of ordinary care.

(Citation omitted.) *Wever v. Hicks*, 11 Ohio St.2d 230, 233, 228 N.E.2d 315 (1967). Under implied assumption of the risk, "defendant owes to plaintiff some duty, but it is plaintiff's acquiescence in or appreciation of a known risk that acts as a defense to plaintiff's action." *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 37, 518 N.E.2d 1226 (10th Dist.1987).

{¶38} Thus, implied assumption of the risk is based on the plaintiff's knowledge of a risk, while contributory negligence is based on the plaintiff's breach of the duty of care. This fundamental difference was not altered by the merger of the two defenses in

12

*Anderson.* Implied assumption of the risk remains a matter of the "plaintiff's consent to or acquiescence in an appreciated, known, or obvious risk to plaintiff's safety." *Trowbridge v. Franciscan Univ. of Steubenville*, 7th Dist. Jefferson No. 12 JE 33, 2013-Ohio-5770, ¶ 16; *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, ¶ 11 ("secondary (or implied) assumption of the risk requires a showing that the plaintiff has consented to or acquiesced in an appreciated or known risk").

{¶39} What the Ohio Supreme Court did in *Anderson* was to merge the defenses under the contributory negligence statute so that a plaintiff's assumption of the risk as well as contributory negligence could be considered in determining whether the plaintiff's fault in causing his or her injury exceeded that of the defendant (thus barring recovery). In *Anderson*, the Supreme Court "found that implied assumption of risk could limit a plaintiff's recovery in the same way that contributory negligence limited recovery under [the contributory negligence statute]." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 430, 659 N.E.2d 1232 (1996). When the General Assembly amended the contributory negligence statute "to reflect the holding of *Anderson* that implied assumption of risk and contributory negligence merge for purposes of that statute," it recognized that "contributory fault" could mean "contributory negligence * * * or * * * implied assumption of the risk." *Id.* at 430, fn. 2.

{¶40} Sanders' argument is based on the distinction between reasonable and unreasonable assumption of the risk. As noted by the Supreme Court in *Wever*, *supra*, assumption of the risk coexists with or resembles contributory negligence when unreasonable, but "either may exist without the other." For purposes of determining the

13

parties' relative fault, the distinction between a reasonable assumption of the risk and an unreasonable assumption of the risk is of no legal importance.

{¶41} In fact, the Supreme Court in *Anderson* merged the doctrines to avoid the incongruous result that could occur when the assumption of the risk was reasonable:

"[T]here are situations where the defenses of assumption of risk and contributory negligence will overlap. The plaintiff's conduct in accepting the risk may itself be unreasonable, because the danger is out of all proportion to the interest which he is seeking to advance * * *." * * * Under the prior cases, the overlap in these doctrines posed no problems because in practice it did not matter whether the plaintiff's conduct was denominated as assumption of risk or contributory negligence, since both stood as absolute bars to a plaintiff's recovery. However, now, under [the contributory negligence statute], if a plaintiff's conduct constitutes both contributory negligence and assumption of risk, continued adherence to the differentiation of the doctrines can lead to the anomalous situation where a defendant can circumvent the comparative negligence statute entirely by asserting the assumption of risk defense alone. We do not believe that the General Assembly intended such a result in its enactment of [the contributory negligence statute], and for this reason, we must revise our prior pronouncements on the doctrine of assumption of risk in view of this statute.

14

(Internal citation omitted.) *Anderson*, 6 Ohio St.3d at 113, 451 N.E.2d 780.

**{¶42}** The Supreme Court in *Anderson* recognized that, unless assumption of the risk and contributory negligence merged for purposes of the statute, assumption of the risk remained a complete bar to recovery when reasonable but, when it was unreasonable and overlapped with contributory negligence, merely limited a plaintiff's potential recovery. By merging the doctrines the Supreme Court rendered the practical distinction between reasonable and unreasonable assumption of the risk, which Sanders seeks to exploit, meaningless.

**{¶43}** Thus, Sanders' assertions of the reasonableness of her conduct miss the mark. The relevant inquiry is to what degree did her assumption of the risk proximately cause her injuries. *Knopp v. Dayton Machine Tool, Co.*, 7th Dist. Columbiana No. 03 CO 60, 2004-Ohio-6817, ¶ 19 ("resolution of the issue of proximate cause in this case involves the doctrine of implied assumption of risk"); *Bumgardner v. Wal-Mart Stores, Inc.*, 2d Dist. Miami No. 2002-CA-11, 2002-Ohio-6856, ¶ 17 ("implied assumption of risk is considered to be an issue of causation, not of duty").[2]

**{¶44}** To this end, we note that on July 22, 2011, Sanders was at her father's house when she noticed "cop cars," "people," and "horses" up the road. She knew from prior incidents that the horses belonged to Frank. On this occasion, the horses never

---

2. The concurring writer insists that the reasonableness of Sanders' conduct "is what should be compared to the defendant's conduct in order to determine recovery." *Infra* at ¶ 59. The concurring writer does not explain in what way Sanders' conduct was unreasonable. Rather, the concurring writer states that the "magistrate appears to have assessed * * * whether appellant's conduct in attempting to assist with securing the horse at-large was reasonable." *Infra* at ¶ 60. In fact, the magistrate finds no fault at all with Sanders' conduct. Her decision is wholly based on the finding that "Sanders knowingly acted with full awareness of the dangers, unpredictability and natural propensities of horses," not the relative reasonableness or unreasonableness of her conduct. The concurring writer misses the point that, while "'contributory fault' includes express assumption of the risk," the doctrine of assumption of the risk remains distinct from that of contributory negligence. Note the use of the disjunctive in R.C. 2307.011(B): "'Contributory fault' means contributory negligence, other contributory tortious conduct, *or*, * * * express or implied assumption of the risk." (Emphasis added).

15

entered her father's property. She grabbed some lead ropes that were kept ready for such occasions and walked up the road to assist the officers. Sanders testified that she was experienced with riding, grooming, and rounding up horses and familiar with Frank's horses in particular. She had previously restrained the lead mare (Kush) and returned her to Frank's property. In light of this testimony, the magistrate's conclusion that "Sanders was more than fifty-percent responsible for the injuries she sustained as she was certainly aware of the risk in rescuing the horse and proceeded in spite of those risks" is not against the manifest weight of the evidence.

{¶45} The fourth assignment of error is without merit.

{¶46} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, finding in favor of Frank on Sanders' claims, is affirmed. Costs to be taxed against the appellant.

TIMOTHY P. CANNON, P.J., concurs in judgment only with a Concurring Opinion,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Dissenting Opinion.

_____

TIMOTHY P. CANNON, P.J., concurring in judgment only.

{¶47} I concur in judgment only. I agree with the holding and analysis with regard to the first two assignments of error. I also agree with the holding with regard to the third and fourth assignments of error, but I disagree with a portion of the analysis addressing the doctrine of assumption of the risk.

16

{¶48} The main focus of the majority's analysis is the Ohio Supreme Court case of *Anderson v. Ceccardi,* 6 Ohio St.3d 110 (1983). When that case was decided, the Supreme Court recognized the merger of the defense of *implied* assumption of the risk with contributory negligence based on the provisions of then-existing R.C. 2315.19. I believe, however, it is important to note that version of the statute was repealed in 2003. It has been replaced by R.C. 2315.33 and R.C. 2307.011.

{¶49} R.C. 2315.33 now provides:

> The contributory fault of a person does not bar the person as plaintiff from recovering damages that have directly and proximately resulted from the tortious conduct of one or more other persons, if the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery in this action and of all other persons from whom the plaintiff does not seek recovery in this action. The court shall diminish any compensatory damages recoverable by the plaintiff by an amount that is proportionately equal to the percentage of tortious conduct of the plaintiff as determined pursuant to section 2315.34 of the Revised Code.

{¶50} In addition, R.C. 2315.34 provides:

> If contributory fault is asserted and established as an affirmative defense to a tort claim, the court in a nonjury action shall make findings of fact, and the jury in a jury action shall return a general verdict accompanied by answers to interrogatories, that shall specify the following:
>
> (A) The total amount of the compensatory damages that would have been recoverable on that tort claim but for the tortious conduct of the plaintiff;
>
> (B) The portion of the compensatory damages specified under division (A) of this section that represents economic loss;
>
> (C) The portion of the compensatory damages specified under division (A) of this section that represents noneconomic loss;

17

(D) The percentage of tortious conduct attributable to all persons as determined pursuant to section 2307.23 of the Revised Code.

Finally, R.C. 2307.011 states: "(B) 'Contributory fault' means contributory negligence, other contributory tortious conduct, or, except as provided with respect to product liability claims in section 2307.711 of the Revised Code, *express or* implied assumption of the risk." (Emphasis added.) The inclusion of *express* assumption of the risk in this definition affects much of the prior case law that addressed distinctions which are no longer applicable. The statute does not provide for *express* assumption of the risk to operate as a complete bar to recovery.

{¶51} Currently, the Ohio Jury Instructions (OJI) recognize and define three types of assumption of the risk: (1) Express, as defined in OJI §403.09(1); (2) Implied, as defined in OJI §403.09(2), and (3) Primary, as defined in OJI §403.09(3). In light of R.C. 2307.011, which now directs that express assumption of the risk be included in the determination of "contributory fault," the comment at the beginning of OJI §403.09 appears misguided. It states: "The Committee believes that express assumption of risk and primary assumption of risk are complete bars to recovery in any negligence action." This is in direct conflict with the definition of "contributory fault" found in R.C. 2307.011. The interrogatories required by R.C. 2315.34 are set forth in OJI §403.01-07. The commentary associated with those interrogatories also indicates that express assumption of the risk is a bar to recovery.

{¶52} I believe there is confusion between some of the cases that continue to follow and cite *Anderson* and the commentary to the jury instructions regarding express assumption of the risk. The amendments to the statutory scheme effective in 2003 demonstrate the following: First, there is a pronouncement in R.C. 2315.33 that

18

"contributory fault of a person does not bar the person as plaintiff from recovering damages * * *." Also, the 2003 definition of "contributory fault" specifically includes conduct that amounts to "express" assumption of the risk.

{¶53} In the 2005 amendment to this section, language was added that referred to product liability claims. The provisions of R.C. 2307.711(B)(2) specify that in product liability cases, *both* express and implied assumption of risk operate to bar recovery:

> Subject to division (B)(3) of this section, if express or implied assumption of the risk is asserted as an affirmative defense to a product liability claim under sections 2307.71 to 2307.80 of the Revised Code and if it is determined that the claimant expressly or impliedly assumed a risk and that the express or implied assumption of the risk was a direct and proximate cause of harm for which the claimant seeks to recover damages, the express or implied assumption of the risk is a complete bar to the recovery of those damages.

{¶54} The *Anderson* Court merged the theories of comparative/contributory negligence with implied assumption of the risk. However, it did note that express assumption of the risk would still operate as a complete bar to recovery. This portion of the decision has been superseded by operation of the new statute.

{¶55} With the foregoing in mind, one salient question stands out: whether the definition of express assumption of the risk as set forth in the jury instructions also defines express assumption of risk as used in R.C. 2307.011.

{¶56} The instruction for express assumption of the risk, as found in OJI §403.09(1) states: "The defendant claims that the plaintiff expressly assumed the risk of injury. The plaintiff expressly assumed the risk if he/she expressly agreed or contracted with the defendant not to sue for any future injuries which might be caused by the defendant's negligence." The instruction states that this definition is taken from

19

*Anderson,* which also stated that express assumption of the risk was a complete bar to recovery. The statute, however, was amended after the decision in *Anderson* to include express assumption of the risk as a part of the definition for "contributory fault" and specifically does not bar recovery.

{¶57} The need for clarification here is apparent. If trial judges rely on the Ohio Jury Instructions and tell juries that express assumption of the risk is a complete bar to recovery, but the statute includes it for consideration in "contributory fault," a jury could be very misinformed. Whether the definition of express assumption of the risk as given by the editors in OJI is what the legislature intended when that term was used in drafting R.C. 2307.011 is certainly something that needs to be resolved.

{¶58} Additionally, I disagree with the majority opinion's suggestion that the law has distanced itself from the "reasonable man" standard in assessing relative fault. A jury is told that negligence is the failure to use ordinary care. OJI §401.01(1). Ordinary care is defined as "the care that a reasonably careful person would use under the same or similar circumstances." OJI §401.01(2). I believe appellant was properly arguing the "reasonableness" of her conduct. The majority asserts that the Supreme Court has "rendered the practical distinction between reasonable and unreasonable assumption of the risk, which Sanders seeks to exploit, meaningless." I disagree. I believe, in assessing the relative "contributory fault" of the parties, whether the plaintiff acted reasonably or unreasonably is relevant.

{¶59} If the trier of fact determined appellant's conduct was unreasonable under the circumstances, then such conduct would be factored into the jury's determination of the parties' relative fault. The majority states the only question "is to what degree her

20

assumption of the risk proximately caused her injuries." This, however, requires an assessment of whether that risk was reasonable under the circumstances. The confusion over this concept was addressed well by the Second District Court of Appeals in *Borchers v. Winzeler Excavating Co.*, 83 Ohio App.3d 268 (2d Dist.1992). There, Judge Brogan suggested that the reasonableness of the assumption should be taken into account: "In an almost Alice in Wonderland script, under implied assumption of risk, plaintiffs who have acted reasonably in assuming a risk face a complete bar to recovery, while plaintiffs who have acted unreasonably benefit from comparative-fault principles and may recover substantial portions of their damages." *Id.* at 274. As the majority notes, the concepts of comparative negligence and assumption of the risk are distinct concepts. However, regardless of which concept applies, the reasonableness or unreasonableness of the conduct of the plaintiff is what should be compared to the defendant's conduct in order to determine recovery. This is particularly true in view of the statute that now specifically states that "contributory fault" includes express assumption of the risk.

{¶60} In this case, the magistrate appears to have assessed and made findings of fact with respect to the negligence of appellee and whether appellant's conduct in attempting to assist with securing the horse at-large was reasonable. The factual determination was made that appellant "was more than 50% responsible for the injuries she sustained as she was certainly aware of the risk in rescuing the horse and proceeded in spite of those risks." In other words, appellant was barred from recovery because her assumption of a known risk was unreasonable and contributed more than 50% to her injuries. There is competent, credible evidence to support that

21

determination. Therefore, I agree with the majority that the decision of the trial court should be affirmed.

_____

COLLEEN MARY O'TOOLE concurs in part and dissents in part with a Dissenting Opinion.

{¶61} I concur with the writing judge regarding the first assignment of error. However, as the rescue doctrine clearly applies in this matter, I dissent as to appellant's remaining assignments of error.

{¶62} Regarding appellant's second assignment of error, this writer concludes that, given the well-recognized danger that loose horses pose, the rescue doctrine clearly applies in this matter. The rescue doctrine has been well-established in Ohio law for over a century. *See Pennsylvania Co. v. Langendorf*, 48 Ohio St. 316 (1891), paragraphs one through three of the syllabus. Under the rescue doctrine, "'[o]ne who is injured in an attempt to rescue a person in danger as a result of that person's own negligence may recover from that person under established principles of negligence including proximate causation.'" *Skiles v. Beckloff*, 9th Dist. Lorain No. 93CA005550, 1993 Ohio App. LEXIS 3824, *2-3 (Aug. 4, 1993), quoting *Reese v. Minor*, 2 Ohio App.3d 440 (1st Dist.1981), syllabus. *See also Langendorf* at paragraph three of the syllabus (unless the rescuer unnecessarily exposes himself or herself to danger, "the injury should be attributed to the party that negligently, or wrongfully, exposed to danger, the person who required assistance.").

22

{¶63} Additionally, the rescue doctrine serves public policy interests in promoting rescues and recognizes that the rescue response is a natural and probable consequence of the negligence which created the peril. *Skiles, supra,* at *4-5.

{¶64} In her decision, the magistrate refers to the Equine Immunity Statute (R.C. 2305.321) as evidence of the known dangers that horses present. Despite the undisputed danger presented by horses running loose, the magistrate determined that, at the exact time of the rescue, and injury to appellant, the horses did not present an imminent danger of harm because they were no longer on the roadway: thus the rescue doctrine did not apply. This finding is completely at odds with the magistrate's own description of how dangerous horses can be. The trial court's finding is essentially: this situation was so dangerous that appellant assumed the risk of injury—but it was not *so* dangerous as to invoke the rescue doctrine.

{¶65} A trial court's findings of fact must be given deference, and, as such, this court will not disturb such determinations save an abuse of discretion. *McPhillips v. United States Tennis Assn. Midwest*, 11th Dist. Lake No. 2006-L-235, 2007-Ohio-3595, ¶28. The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶66} The decision of the trial court that these horses running loose did not present an imminent threat/danger because they were not on the roadway does not

comport with reason or the record. Additionally, the writing judge notes that the risk of danger was mitigated by the presence of police officers on the scene. The trial court and writing judge ignore the fact that the horses presented an imminent danger to the police officers who were trying to capture them: a danger not mitigated by the horses being off the roadway.

{¶67} Additionally, both officers testified that they were incapable of handling this situation and would not have been able to secure the horses without the help of appellant. The officers testified that the horse, Kush, would buck, rear and run whenever they approached him. They also testified that the other two horses would follow Kush when he ran. We call the police to handle dangerous, emergency situations. A situation that is beyond the ability of law enforcement to handle—without the aid of a specialist—is not only dangerous by definition, it clearly invokes the rescue doctrine.

{¶68} Had appellant not come to the aid of the officers, they would have to hope the owner (who does not live where the horses are kept) would arrive soon, or be forced to call in an expert horseman to secure the horses. How long would this have taken? How many times would these horses have crossed the road—presenting an even graver danger to the public—in the time it would take for the police to secure the professional help needed?

{¶69} The writing judge states that appellant's decision was not "compelled by an emergency situation." The mere fact that the horses were in a field near the roadway and not in the roadway does not lessen the danger present in the situation. How are loose horses, roaming in a field *near* a roadway significantly less dangerous

than a horse *in* the roadway? The magistrate, trial court and writing judge have inappropriately taken an ongoing, continuing emergency situation and broken it down to separate, discrete parts: imminent and non-imminent danger. The fact remains that the entire time these horses were loose was, by definition, an emergency situation. To hold otherwise ignores the inherent risk to the public that loose horses present. It also ignores the clear warnings about horses contained in R.C. 2305.321.

{¶70} Additionally, by focusing on the alleged lack of danger the horses presented, because they were not in the roadway, the trial court and the writing judge have employed the incorrect standard by which to judge the actions of appellant. As the Third District in *Marks v. Wagner* noted:

> the violation of the duty of the defendant to the rescuer occurs at the moment when the duty to the person to be rescued is breached setting in motion the forces triggering the rescue attempt; *i. e.*, the defendant's actionable negligence occurs at that time. Though we know of no other Ohio cases which have previously treated the question, the issue of whether the proposed rescuer is thereafter contributorily negligent in attempting a rescue is determined, not by a consideration of the circumstance of the actual peril at that time of the person to be rescued, but by a consideration of the mental state of the rescuer, as to what he reasonably believed from the facts known to him the peril of the person to be rescued to be at that time. More simply stated, the circumstance to be considered is not the fact of peril but the reasonable belief of continued peril.

52 Ohio App.2d 320, 324 (1977).

{¶71} Even assuming, for the sake of argument, that the location of the horses in the field presented no imminent danger, appellant reasonably believed that loose horses presented an ongoing emergency situation that needed to be dealt with to insure the safety of the public.

25

{¶72} The public policy implications of this decision are also concerning. There was testimony that these horses had gotten loose previously (at least five or six times prior to appellant's injury) and that neighbors, including appellant, would help corral the horses. After this decision it must be assumed that no neighbor will aid in the recovery of loose horses anywhere in this appellate district. No rational person is going to volunteer to help corral a runaway horse if they know that they might be responsible for any injury they might suffer. The consequences of this decision are that in future situations involving loose horses, police officers will have to spend significant time trying to locate an expert to aid them. Experts, who, no doubt, will want to be indemnified for any injuries they may suffer. How long will it take to obtain the services of such experts? And how much damage might be done by these loose horses in the meanwhile?

{¶73} The writing judge's decision will lead to situations where loose horses will run free for extended periods of time because no rational volunteer will aid in their capture. Law enforcement will have to spend precious time and energy seeking expert help while the horses continue to roam free. And the risk of harm to the public will be increased.

{¶74} A decision that has the result of increasing the risk of harm to the public does not comport with reason. A far better resolution is for the person whose negligence created the dangerous situation to be held responsible for his actions.

{¶75} I respectfully concur in part and dissent in part.